## MAGDALENE BERGER v. CHURCH OF ST. PATRICK AND ANOTHER.[1]

May 1, 1942.

No. 33,079.

*John M. Prins,* for relators.
*Walsh & Walsh,* for respondent.

[1]Reported in 3 N. W. (2d) 590.

346

LORING, JUSTICE.

*Certiorari* to the industrial commission to review a decision awarding respondent compensation.

At the time of the accident and for approximately eight years prior thereto, respondent worked as housekeeper for Father Lee, pastor of the Church of St. Patrick, in the parish house furnished by the church. Father Lee hired her and paid her by means of checks of the church made out and signed by him. He was an executive officer of the church corporation and as such signed checks for all expenditures, including his own salary. He was allowed $1,600 per year as salary, and the arrangement was that he was to pay respondent's wages out of that amount.

The church carried a valid workmen's compensation insurance policy at the time of the accident. Father Lee first contracted for the insurance in 1937 with James Tracy, agent of the insurer. Both testified that they talked about the housekeeper and agreed that she should be covered by the policy. The insurer's auditor was aware that respondent's salary was paid out of the $1,600, and no claim is made that the insurer was misled. A notation attached to the insurer's payroll audit made in 1937 when the first policy was taken out stated: "The wage of the housekeeper (which amounts to $40.00 per month) is not included above. Pastor pays that out of his stipend of $1,600.00." The insurance was renewed each year, and each year's payroll report was made out by the same auditor. His reports indicate that all the policies were set up in substantially the same manner and that each included $1,600 as Father Lee's salary, which covered respondent's pay. The policy in force at the time of the accident listed three classifications of employes as follows:

"1 CHURCHES:

    (a) Clergy, Professional Assistants, Organists or members of choir—including Clerical Office employees. (8840)

COLLEGES OR SCHOOLS:

    (b) Professors, Teachers or Professional Employees
        including Clerical Office Employees. (8868)
    (c) All other Employees        (9101)"

The accident occurred in the afternoon of February 23, 1940, when respondent was returning to the parish house from the church. She slipped on the icy sidewalk near the parish house and fractured her hip.

Relators contend (1) that respondent was an employe of Father Lee and not of the church; (2) that she was not injured in the course of her employment; and (3) that she was a domestic servant and the church had not assumed liability for any accidental injuries she might sustain. The amount of the award is not questioned.

1. Contentions (1) and (2) do not raise difficult problems. Respondent was hired and controlled by Father Lee, but his position as executive officer of the church corporation gave him authority to do so. She kept house for the assistant pastor as well as Father Lee. It was also a part of her duty to take care of church linens, church clothing, and the parish house itself, as well as the personal belongings of the two priests. The fact that she was paid by the priest from the $1,600 set aside for his salary does not compel a finding that she was his employe. Father Lee testified that in case he could not get his salary the church was obligated to pay respondent. The evidence sustains the finding that she was paid in this manner for the convenience of the church and that in fact she was its employe. *Cf.* Janosek v. Farmers Co-op. Cry. Co. 182 Minn. 507, 234 N. W. 870.

2. Respondent was working as usual the day of her injury. She left the house at Father Lee's order upon parish business. She stopped at the church on her way back, attended services, which she was expected to do, made a check at the sacristy to see if clean surplices were needed, ordered groceries by phone from the church, and then proceeded back to the parish house. She slipped and fell on the driveway of the parish house. Clearly, the

accident arose out of and in the course of the employment as required by Mason St. 1940 Supp. § 4272-4.

3. Mason St. 1940 Supp. § 4272-4, states in part:

"This Act shall not be construed or held to apply to any common carrier by steam railroad, domestic servants, farm laborers or persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession, or occupation of his employer; provided, however, that an employer of farm laborers or domestics *may assume the liability for compensation and benefits imposed by sections 1 and 2 hereof upon employers,* and the purchase and acceptance by such employer of a valid compensation insurance policy, which shall include in its coverage a classification of farm laborers or domestics, shall constitute as to such employer an assumption by him of such liability without any further act on his part, and such assumption of liability shall take effect and continue from the effective date of such policy and as long only as such policy shall remain in force. If during the life of any such insurance policy, an employe who is a farm laborer or domestic, shall suffer personal injury or death by an accident arising out of and in the course of his employment, the exclusive remedy of such employe or his dependents shall be to accept compensation and benefits according to the Workmen's Compensation Act."

In the case at bar the respondent was a domestic within the meaning of that term as defined in Anderson v. Ueland, 197 Minn. 518, 267 N. W. 517, 927. However, relators contend that the policy did not include in its coverage a classification of domestics and that therefore the employer did not "assume" liability for her accidental injury. The statute does not provide that a specific classification of domestic servants in the covenants of the policy shall be the only method by which liability may be assumed. In that respect, it must be distinguished from the statute construed in O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636.

The act indicates a purpose to impose liability for compensation

only while valid compensation insurance coverage of farm laborers and domestics is in force. That seems to be the objective of the act. The means of assumption not being confined to obtaining a policy with a specific classification; it may be assumed that any language in the contract which extended the coverage to farm laborers and domestics was within the legislative purpose of imposing assumption of compensation liability. Stated concisely, the intent of the legislature appears to have been to impose upon an employer an assumption of liability under the act whenever he obtains compensation insurance coverage for farm laborers or domestics and to limit such employes to that remedy when and while so covered.

The policy here involved did not contain a specific classification for domestics, but it did cover "All other Employees." That provision, plus the conversation between the priest and the agent, the payroll audit (using $1,600 as the premium basis), and the explanatory note attached to the payroll audit report showing that respondent's salary was included in the $1,600 listed to the priest, amply supported a finding that the housekeeper was covered by the policy. Compensation liability followed.

Respondent is allowed $100 attorney's fees in this court.

Writ discharged and decision affirmed.