**Kathryn ARENS, Respondent,**

v.

**Gertrude HANECY, Respondent,**

**State Treasurer, Custodian of the Special Compensation Fund, Relator,**

**Minnesota Laborers' Health and Welfare Fund, Intervenor, Respondent,**

**Insurance Company of North America, Intervenor, Respondent.**

No. 48318.

Supreme Court of Minnesota.

Aug. 25, 1978.

Warren Spannaus, Atty. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, for relator.

Rishmiller, Wasche & Knippel, Minneapolis, for Arens.

Bruce Wyant, Minneapolis, for Hanecy.

O'Connor & Hannan, John Sommerville, Minneapolis, for Minn. Laborers.

Van Eps & Gilmore, Minneapolis, for I. N. A.

Heard before SHERAN, C. J., and RO-GOSHESKE and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Relator, state treasurer, custodian of the special compensation fund, has sought re-

view by writ of certiorari[1] of the March 8, 1977 findings and determination of the workers' compensation judge awarding employee-respondent Kathryn Arens $3,241.31, as affirmed by the Workers' Compensation Court of Appeals. We reverse.

Employer-respondent Gertrude Hanecy is a physically incapacitated, 86-year-old widow, who requires the assistance of a housekeeper/personal attendant. Kathryn Arens responded to a newspaper advertisement of the position, and several days later, on February 23, 1976, began assisting Mrs. Hanecy. The agreed terms of employment were $2.50 per hour, 6 hours per day, 6 days per week. No term of employment was specified, though both parties apparently regarded the position as permanent, pending satisfactory performance. Mrs. Arens returned on February 24 and spent most of the day with Mrs. Hanecy's departing housekeeper, Gladys Wabschall, learning the requirements of the job. On February 25, in the course of performing regular housekeeping duties, Mrs. Arens fell down several basement stairs, apparently causing neck and lower back muscle strain and vertebra subluxation (misalignment).

Mrs. Arens incurred medical (chiropractic) expenses of $1,907. Intervenor Minnesota Laborers' Health and Welfare Fund (Mrs. Arens' husband's hospitalization insurer) paid $325 and duly asserted its claim for reimbursement. Intervenor Insurance Company of North America (Mrs. Hanecy's homeowner's insurer) paid $1,000 and duly asserted its claim for reimbursement.

Following a hearing on the petition, the compensation judge awarded Mrs. Arens $3,241.31, plus costs and interest based upon one year temporary total disability. Mrs. Hanecy appealed to the workers' compensation court of appeals, who affirmed the decision of the compensation judge in a divided decision.[2]

Neither the injury nor the award is squarely contested here. The sole issue for resolution is whether workers' compensation coverage is available for employee-respondent Arens under Minn.St. 176.041, subd. 1, as amended, L.1975, c. 359, § 5, the so-called "household worker" exclusion. This statute reads in relevant part:

"* * * Neither shall the chapter apply to any person employed as a household worker in, for, or about, a private home or household who earns less than $500 in cash in any three month period from a single private home or household provided that any household worker who has earned $500 or more from his present employer in any three month period within the previous year shall be covered by Laws 1975, Chapter 359 regardless of whether or not he has in the present quarter earned $500. * * * "

In providing a threshold for coverage based upon quarterly earnings, the statute established a patent ambiguity as related to the facts of this case.

The position taken by the employee, the compensation judge, and the majority of the court of appeals is that the use of the present tense "earns" in the first clause, in contrast with "has earned" in the second, implies that coverage is based upon a threshold pay rate contained in an employment agreement and that coverage is effective at the commencement of the employment term. Since Mrs. Arens' anticipated pay rate exceeded the $500 threshold, she would have been covered at the time of the accident. The employer and the dissenting member of the court of appeals contend that coverage is effective only upon actually earning $500 in a quarter, noting that the modifying language, "earns less than $500 *in cash* " (emphasis added), seems to require receipt rather than anticipation, and that the proviso in the second clause suggests a

1. Minn.St. 176.471.

2. Because Mrs. Hanecy did not carry workers' compensation insurance, the $3,241.31 award (plus additional interest and costs) would be paid by the state treasurer out of the Special Compensation Fund. Minn.St. 176.183, subd.

1. The fund is then entitled to sue Mrs. Hanecy for the disbursement, plus punitive damages of up to 50 percent. Moreover, she could be guilty of a gross misdemeanor and subject to a $50 penalty. Minn.St. 176.181, subds. 3, 4.

carry-over of established coverage to subsequent quarters. Since Mrs. Arens' total earnings prior to the accident were only about $43, coverage would not have been in effect at the time of the accident.

Either position is facially reasonable. Consideration of the available legislative history leads us to conclude that the second construction, that coverage is not effective until the $500 threshold is actually reached, is the intended effect of the statute.[3] Accordingly, we reverse the decision of the compensation court and direct a decision in favor of employer-respondent Hanecy.

As originally instituted, workers' compensation plans excluded "domestic servants." Worker's compensation coverage was premised on the theory that the cost of employee accidents should be absorbed by the industry and passed along to the consumer in the price of the product, a theory inapplicable to domestic service. *Eichholz v. Shaft,* 166 Minn. 339, 342, 208 N.W. 18, 19 (1926). Later, coverage for domestic employees was left to the election of the employer. Mason St.1940 Supp. § 4272–4; See, *Berger v. Church of St. Patrick,* 212 Minn. 345, 3 N.W.2d 590 (1942).

Pursuant to authority contained in the Federal Occupational Safety and Health Act of 1970, 29 U.S.C.A., § 676, the National Commission on State Workmens' Compensation Laws filed a report in July 1972 recommending significant changes in the state workers' compensation laws. The report contained 19 "essential recommendations," among them:

"We recommend that as of July 1, 1975, household workers and all casual workers be covered under workmen's compensation at least to the extent they are covered by social security."[4] Report of the National Commission on State Workmens' Compensation Laws, p. 47 (1972).

In 1975, when the Minnesota legislature was considering significant changes in its workers' compensation laws, 16 states provided varying degrees of coverage for domestic employees, although none had gone as far as the recommendations of the National Commission. See, statutes collected in 1A Larson, Workmen's Compensation Law § 50.30.

It is clear from the record that the House Government Operations Committee and its Public and Private Employees Subcommittee considered the proposed legislation in light of the National Commission Report. In fact, as originally introduced, the legislation adopted the commission's domestic servant recommendation:

"* * * Neither shall the chapter apply to any person employed as a household worker in a private home or household who earns less than $50 in cash in any three month period from a single private home or household. * * *" House File 522 (1975).

The legislation was repeatedly amended. The threshold amount was raised from $50 to $200 in the subcommittee, and to $500 in hearings before the full committee. The members expressed concern about overly-broad coverage, particularly noting the burden upon working parents who regularly employ babysitters.

More significantly, on March 12, 1975, the subcommittee added a carryover proviso:

"* * * provided that any household or casual worker who has earned $50 or more from his present employer in any three month period within the previous year shall be covered by this act regardless of whether or not he has in the present quarter earned $50, * * *."

The proviso was explained by a legislative analyst, whose remarks clearly show the understanding of the members:

"* * * which says in effect if you've earned $50 from your present employer as a casual or household worker in any of the past four quarters of the previous year you will then be covered in the present quarter. Otherwise, what hap-

---

3. See Minn.St. 645.16.

4. Social Security coverage extends to domestic servants who receive cash remuneration of $50 or more in any calendar quarter. 26 U.S.C.A., § 3121(a)(7)(B).

pens is, every quarter you sort of start over again and so the first $50 that you earn, you're not covered. The intention of this section was to make coverage the same as Social Security coverage. That was the recommendation of William Javitts, and the National Commission. It doesn't really make any difference, or it is not so serious if you are not covered by Social Security maybe for the first part of a quarter because at the end of the quarter, the employer, if he paid more than $50, can make all the payments. Here, if you are not covered for the first $50 that you earn, and you happen to get hurt, the consequences are rather serious."

We believe that the record indicates that the legislature made a major policy decision in extending workers' compensation coverage to household workers and, reflecting the concerns of the members, chose to restrict coverage to a specific class of those employees. The legislature may wish to reexamine and further extend workers' compensation coverage. That decision, however, is not within our power or purview.

Reversed.